## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY COMPANY | ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) ) | |
| R.M. STANDARD & COMPANY<br>10867 Rosehill Drive<br>Overland Park, KS 66210 | ) ) ) ) | Case No: |
| And | ) ) | |
| DANIEL SMITH<br>415 W. 49th Terrace<br>Kansas City, MO 64112 | ) ) ) ) | |
| And | ) ) | |
| PENELOPE SMITH<br>415 W. 49th Terrace<br>Kansas City, MO 64112 | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Mid Continent Casualty Company ("Mid Continent"), by and through counsel, and for its Complaint for Declaratory Judgment against Defendants R.M. Standard & Company, Daniel Smith and Penelope Smith, states the following

1.     Plaintiff is an Ohio insurance company with its principal place of business in Tulsa, Oklahoma.

2.     Defendant R.M. Standard & Company ("RM Standard") is a Kansas corporation with its principal place of business in Kansas at 10867 Rosehill Drive, Overland Park, KS 66210.

3. Defendant Daniel Smith is a resident of Missouri residing at 415 W. 49th Terrace, Kansas City, MO 64112.

4. Defendant Penelope Smith is a resident of Missouri residing at 415 W. 49th Terrace, Kansas City, MO 64112.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this court pursuant to 28 U.S.C. §1332 because Plaintiff, R.M. Standard and the Smiths are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. Venue is proper in this court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE MID CONTINENT INSURANCE POLICY ISSUED TO RM STANDARD

7. Mid Continent issued a commercial general liability policy to RM Standard for the policy period April 10, 2010 to April 10, 2011 bearing Policy No. 04-GL-000799706 (the "Policy"). A copy of the Policy is attached as Exhibit A.

8. The Policy identifies the insured as R.M. Standard & Company located at 10867 Rosehill Drive, Overland Park, KS 66210.

9. The Policy contains a per occurrence limit of $1,000,000 and a general aggregate limit of $2,000,000 for the respective policy period.

10. The Policy contains a Per Claim Deductible for Property Damage Liability of $2,500.

11. The insuring agreement of the Policy for Coverage A – Bodily Injury and Property Damage Liability states the following:

2

***1. Insuring Agreement***

    ***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

    ***(1)*** *The amount we will pay for damages is limited as described in Section III—Limits of Insurance; and*

    ***(2)*** *Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverage **A** and **B**…*

    ***b****. This insurance applies to "bodily injury" and "property damage" only if*

    ***(1)*** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;*

    ***(2)*** *The "bodily injury" or "property damage" occurs during the policy period;*

12.    The Policy also contains the following definitions:

***SECTION V – DEFINITIONS***

    \*\*\*

***8.***     ***"Impaired property"*** *means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:*

    ***a.***     *it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

    ***b.***     *you have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:*

3

**a.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** your fulfilling the terms of the contract or agreement…

\*\*\*

**13.** **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions…

\*\*\*

**16.** **"Products-completed operations hazard":**

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any Insured;

4

*(2)  the existence of tools, uninstalled equipment or abandoned or unused materials; or*

*(3)  products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.*

17.    ***"Property damage"*** *means:*

*a.        Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

*b.        Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…*

*\*\*\**

21.    ***"Your product"***

*a.  Means*

*(1)        Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

*(a)  you;*

*(b)  others trading under your name; or*

*(c)  a person or organization whose business or assets you have acquired; and*

*(2)        containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

*a.        "Your product" Includes:*

*(1)        warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," and*

*(2)        the providing of or failure to provide warnings or instructions.*

5

> b. Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** **"Your work"**

> a. means
>
> > (1) work or operations performed by you or on your behalf; and
> >
> > (2) materials, parts or equipment furnished in connection with such work or operations.
>
> b. Includes:
>
> > (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
> >
> > (2) the providing of or failure to provide warnings or instructions.

13. The Policy also contains the following exclusions from coverage, in relevant part:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> \*\*\*
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> > (1) That the insured would have in the absence of the contract or agreement; or
> >
> > (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

6

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

***

### f. Pollution

***

> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

***

> However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

***

### j.      Damage to Property

***

> "Property damage" to:

***

> **(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

***

> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

### k.      Damage to Your Product

7

*"Property damage" to "your product" arising out of it or any part of it.*

***

**m.     Damage to Impaired Property or Property Not Physically Injured**

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

***(1)*** *A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*

***(2)*** *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use…*

**n.     Recall of Products, Work or Impaired Property**

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

*(1)     "Your product";*
*(2)     "Your work"; or*
*(3)     "Impaired Property";*

*if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

14.     This Policy also contains seven Endorsements relevant to this matter which state:

*1)  **Endorsement CG2294001***

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

8

*Exclusion **I. of Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:*

**2. Exclusions**

*This insurance does not apply to:*

**l. Damage to Your Work**

*"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*

**2)** **Endorsement ML 1217 (1104)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGUS, MILDEW AND MOLD EXCLUSION**

*This insurance does not apply to:*

**1.**  *"Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;*

**2.**  *Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or*

**3.**  *Any obligation to share with or repay any person, organization or entity, related in any way to items 1 and 2.*

**3)** **Endorsement CG22790798**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

9

*The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability**:*

**1.** *This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:*
> **a.** *Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and*
> **b.** *Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.*

**2.** *Subject to Paragraph **3**. below, professional services include:*
> **a.** *Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and*
> **b.** *Supervisory or inspection activities performed as part of any related architectural or engineering activities.*

**3.** *Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.*

**4)** ***Endorsement ML1354(1104)***

***THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.***

***EXCLUSION – WATER DAMAGE ARISING OUT OF ROOFING OPERATIONS***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

**Deductible $1,000 per claim**

***(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).***

*This insurance does not apply to "property damage" to any building or structure or its contents resulting from the influx of rain, snow, sleet or hail arising out of the Insured's roofing operations; unless*

1. *The contractor has taken prudent steps to determine any approaching adverse weather; and*
2. *The contractor has provided a suitable temporary covering, able to withstand the normal elements.*

*This exclusion does not apply to "property damage" included in the "products-completed operations hazard."*

*All other conditions remain unchanged.*

### 5) *Endorsement CG24260704*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
**AMENDMENT OF INSURED CONTRACT DEFINITION**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*Paragraph 9. Of the **Definitions** Section is replaced by the following:*

**9.** *"Insured contract" means:*

    **a.** *A contract for lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damages by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";*

    **b.** *A sidetrack agreement;*

    **c.** *Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;*

    **d.** *An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;*

    **e.** *An elevator maintenance agreement;*

    **f.** *That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

*Paragraph **f.** does not include that part of any contract or agreement:*

11

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instruction, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**6) _Endorsement ML 10 03 (11 04)_**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**EXCLUSION – INJURY OR DAMAGE FROM EARTH MOVEMENT**

    \*\*\*

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

**7) _Endorsement CG 03 00 01 96_**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**DEDUCTIBLE LIABILITY INSURANCE**

    \*\*\*

**SCHEDULE**

| Coverage | Amount and Basis of Deductible |
|---|---|
| \*\*\* | **PER CLAIM OR PER OCCURRENCE** |
| Property Damage Liability | \*\*\* |
| \*\*\* | $2,500 |

12

A. *Our obligation under the . . . Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.*

B. *You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:*

    1. ***PER CLAIM BASIS***. *If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:*

        \*\*\*

        b. *Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or*

        c. *Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of*

        \*\*\*

        *(2)*     *"Property damage', or*

        *(3)*     *"Bodily injury" and "property damage" combined*

        *as the result of any one "occurrence"*

        \*\*\*

D. *We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.*

## FACTUAL BACKGROUND

14.     On or about March 10, 2017 Daniel Smith and Penelope Smith, husband and wife (collectively the "Smiths") filed a petition against R.M. Standard in the Circuit Court of Jackson County, Missouri, Case No. 1716-CV05979 styled <u>Daniel and Penelope Smith v. R.M. Standard</u>

13

& Co. and NSPJ Architects, P.C. (the" Underlying Lawsuit"). The most recent version of allegations are contained in the First Amended Petition, a true and accurate copy is attached hereto as Exhibit B.

15. The Underlying Lawsuit alleges that on July 20, 2005 the Smiths and RM Standard entered into a Construction Management Agreement in connection with the construction of a residence and surrounding property located at 415 W. 49th Terrace, Kansas City, Missouri (the "Premises").

16. In accordance with the Construction Management Agreement the Smiths allege RM Standard held itself out as a "skilled and experienced home builder who is able to provide the necessary supervision, business administration and coordination of contractors to construct the residence desired as expeditiously and economically as possible . . .".

17. Further, the Smiths allege that in accordance with the Construction Management Agreement RM Standard was required to (a) negotiate contracts on behalf of the Smiths with contractors; (b) supervise construction and provide on-site supervision; (c) contract for and obtain all materials and labor; (d) submit all contracts and agreements with contractors to the Smiths for approval; and (e) warrant the quality of workmanship and material.

18. Further, it is alleged the Premises were designed and constructed with multiple defects including

     a. Defective and improper design and installation of:
       i. Stone exterior around the house and windows;
      ii. Exterior freestanding walls, flatwork and planter boxes;
      iii. Window system and surrounding stonework;

     b. Defective and improper installation of:
       i. Stone exterior around the chimney;
      ii. Pergolas;
      iii. Roof guttering system;

c. Defective and improper repair of:
    i. Window system and surrounding stonework;

d. Defective and improper construction of:
    i. Exterior stair treads and risers;

e. Failure to install an adequate mechanical system capable of balancing the humidity in the home;

f. Failure to correctly design and install the exterior stair foundation walls located at the front of the Property

19. It is further alleged said defects resulted in the following damage to the Property:

a. Water infiltration resulting in damage to wall framing and construction, drywall, paint and moisture staining on the stone exterior of the house, windows, exterior freestanding walls, planter boxes, exterior stair foundation walls and exterior stair treads and risers and chimney;

b. Deterioration of the stone exterior around windows and chimney, exterior freestanding walls, planter boxes, exterior stair foundation walls and exterior stair treads and risers;

c. Unbalanced and unhealthy humidity in the home, requiring the installation of additional dehumidifiers and dehumidistat;

d. Unstable and unsafe pergolas; and

e. Unstable and unsafe roof guttering system.

20. The Smiths seek damages in an amount that is fair and reasonable plus interest, attorney's fees and costs in excess of $150,000.

21. The Underlying Lawsuit alleges multiple causes of action relating to alleged damages from the construction defects including breach of contract, breach of express warranty to construct property in workmanlike manner, breach of implied warranty to construct property in workmanlike manner, breach of duty of good faith and fair dealing, negligent misrepresentation and negligence.

22. RM Standard filed notice of occurrence/claim with Mid Continent.

15

23.     Mid Continent has provided and continues to provide a defense to RM Standard in the Underlying Lawsuit under reservation of its rights to deny indemnity for any judgments.

## COUNT I
### (<u>NO PROPERTY DAMAGE WITHIN POLICY PERIOD</u>)

24.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 23 as if fully set forth.

25.     The Policy only provides coverage for "bodily injury" or "property damage" occurring during the Policy Period of April 10, 2010 to April 10, 2011.

26.     All or some of the damages alleged by the Smiths in the Underlying Lawsuit occurred at times other than the Policy Period of April 10, 2010 to April 10, 2011.

27.     Because the claims and damages alleged in the Underlying Lawsuit were outside the Policy Period of April 10, 2010 to April 10, 2011 there is no coverage and therefore there is no duty for Mid Continent to provide a defense or indemnify RM Standard under the Policy for the Underlying Lawsuit nor is there any obligation to RM Standard or the Smiths.

## COUNT II
### (<u>NO OCCURRENCE OR ACCIDENT</u>)

28.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

29.     Even if some of the claims or damages alleged by the Smiths in the Underlying Lawsuit did occur during the Policy Period, which they did not, the Policy only provides coverage for bodily injury, property damage or personal or advertising injury caused by an occurrence.

30.     The Policy further provides that an "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16

31.     All or some of the damages alleged by the Smiths in the Underlying Lawsuit do not constitute an occurrence or an accident as defined in the Policy or under the law.

32.     Because the claims and damages alleged in the Petition are not an occurrence or an accident, they are not covered by the terms of the Policy and therefore there is no duty for Mid Continent to provide a defense or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT III
## (NO PROPERTY DAMAGE)

33.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 32 as if fully set forth.

34.     Even if some of the claims or damages alleged by the Smiths in the Underlying Lawsuit did occur during the Policy Period and were caused by an occurrence, which they were not, the Policy only pays those sums RM Standard is legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.

35.     The Underlying Lawsuit makes no claim for "bodily injury" to the Smiths as defined by the Policy.

36.     The Underlying Lawsuit claims damages for the cost to repair portions of the allegedly defectively constructed Premises.

37.     "Property Damage" means physical injury to tangible property and loss of use of tangible property that is not physically injured.

38.     All or some of the damages alleged by the Smiths in the Underlying Lawsuit do not constitute "property damage" as defined in the Policy or under the law.

39.     Because the claims and damages alleged in the Petition are not "property damage", they are not covered by the terms of the Policy and therefore there is no duty for Mid

17

Continent to provide a defense or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT IV
## (<u>CONTRACTUAL LIABILITY EXCLUSION</u>)

40.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 39 as if fully set forth.

41.     Even if some of the claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(b) set forth above excludes coverage.

42.     The Smiths' claims for damages arise out of the 2005 Construction Management Agreement whereby the Smiths contend RM Standard assumed certain responsibilities and obligations.

43.     Exclusion 2(b) specifically excludes coverage for property damage for which RM Standard as insured is obligated to pay by reason of the assumption of liability in a contract or agreement.

44.     Exclusion 2(b) excludes coverage for some or all of the Smiths' claims against RM Standard.

45.     Because Exclusion 2(b) excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT V
## (DAMAGE TO REAL PROPERTY EXCLUSION)

46.    Mid Continent repeats and realleges the allegations of paragraphs 1 through 45 as if fully set forth.

47.    Even if some of the claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(j)(5) set forth above excludes coverage.

48.    The Smiths' claims assert property damage that arises out of the work of RM Standard and/or contractors working directly or indirectly on its behalf, while they were performing operations and completing ongoing work.

49.    Exclusion 2(j)(5)specifically excludes coverage for property damage to real property while RM Standard and/or contractors working directly or indirectly on its behalf, were performing operations so long as the property damage arises out of those operations.

50.    Exclusion 2(j)(5)excludes some or all of the Smiths' claims and damages against RM Standard.

51.    Because Exclusion 2(j)(5) excludes coverage for the claims and damages in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT VI
## (DAMAGE TO PROPERTY EXCLUSION)

52.    Mid Continent repeats and alleges the allegations of paragraphs 1 through 51 as if fully set forth.

19

53.     Even if some of the claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(j)(6) set forth above excludes coverage.

54.     The Smiths' claims assert damage to property that must be restored, repaired and/or replaced because RM Standard's "work" was incorrectly performed on it and is not included in the "products completed operations hazard."

55.     Exclusion 2(j)(6) specifically excludes coverage that the particular part of any property that must be restored, repaired or replaced because RM Standard's work was incorrectly performed on it.

56.     Exclusion 2(j)(6) excludes some or all of the Smiths' claims and damages against RM Standard.

57.     Because Exclusion 2(j)(6) excludes coverage for the claims and damages in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

### COUNT VII
### (<u>YOUR PRODUCT EXCLUSION</u>)

58.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 57 as if fully set forth.

59.     Even if some of the claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(k) set forth above excludes coverage.

60.     The Smiths' claims for damages arise out of alleged defects in goods and/or products sold, handled, distributed and/or disposed of by RM Standard or contractors trading under its name and warranties and representations made by RM Standard as to the fitness, quality, durability, performance and/or use of the product.

61.     Exclusion 2(k) specifically excludes property damage to the insured's product arising out of it or any part of it.

62.     Exclusion 2(k) excludes coverage for some or all of the Smiths' claims against RM Standard.

63.     Because Exclusion 2(k) excludes coverage for the claims for damages in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

**COUNT VIII**
**(ENDORSEMENT CG 2294 AND EXCLUSION FOR DAMAGE TO YOUR WORK)**

64.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 63 as if fully set forth.

65.     Even if some of the claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Endorsement CG 2294 excludes coverage.

66.     The Smiths' claims for damage arise out of property damage to RM Standard's work and any part of it which is included in the "products-completed operations hazard."

21

67.     Endorsement CG 2294 specifically excludes any coverage for "property damage" to "Your Work" arising out of it or any part of it and included in the "products completed operations hazard."

68.     Endorsement CG 2294 excludes coverage for some or all of the Smiths' claims against RM Standard.

69.     Because Endorsement CG 2294 excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT IX
## (IMPAIRED PROPERTY OR PROPERTY NOT PHYSICALLY INJURED EXCLUSION)

70.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 69 as if fully set forth.

71.     Even if some claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(m) set forth above excludes coverage.

72.     The Smiths' claims for damages assert "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in RM Standard's product and/or work and/or a delay or failure by RM Standard and/or others acting on its behalf to perform a contract or agreement in accordance with its terms.

73.     Exclusion 2(m) specifically excludes any coverage for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect,

deficiency, inadequacy or dangerous condition in RM Standard's product and/or work or a delay or failure by RM Standard or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

74.     Exclusion 2(m) excludes coverage for some or all of the Smiths' claims against RM Standard.

75.     Because Exclusion 2(m) excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT X
## (RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY EXCLUSION)

76.     Mid Continent repeats and realleges the allegations of paragraphs 1 through 75 as if fully set forth.

77.     Even if some claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Exclusion 2(n) set forth above excludes coverage.

78.     The Smiths' claims for damages assert damages claimed for loss, cost and expense incurred for the loss of use, repair, replacement, adjustment, removal and/or disposal of RM Standard's work, product and/or "impaired property" in that such product, work or property was withdrawn or recalled from use because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

79.     Exclusion 2(n) specifically excludes any coverage for damages claimed for any loss, cost or expense incurred by RM Standard or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of RM Standard's product, work or "impaired property" if such product, work or property is withdrawn or recalled from the

23

market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

80. Exclusion 2(n) excludes coverage for some or all of the Smiths' claims against RM Standard.

81. Because Exclusion 2(n) excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

**COUNT XI**
**(<u>INJURY OR DAMAGE FROM EARTH MOVEMENT ENDORSEMENT AND EXCLUSION</u>)**

82. Mid Continent repeats and realleges the allegations of paragraphs 1 through 81 as if fully set forth

83. Even if some claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Endorsement Form ML 10 03 (11 04) titled "Exclusion – Injury or Damage from Earth Movement" set forth above excludes coverage.

84. The Smiths claim damages as a result of "property damage" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting and/or other movement of land, earth and/or mud.

85. Endorsement 10 03 specifically excludes any coverage for "property damage" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting and/or other movement of land, earth and/or mud.

24

86. Endorsement 10 03 excludes coverage for some or all of the Smiths' claims against RM Standard.

87. Because Endorsement 10 03 excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT XII
### (<u>FUNGUS, MILDEW AND MOLD ENDORSEMENT AND EXCLUSION</u>)

88. Mid Continent repeats and realleges the allegations of paragraphs 1 through 87 as if fully set forth.

89. Even if some claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law, which they do not, Endorsement Form 12 17 (02 10) titled "Fungus, Mildew and Mold Exclusion" set forth above excludes coverage.

90. The Smiths claim damages as a result of "property damage" arising out of, resulting from, caused by, contributed to, attributed to and/or related to fungus, mildew, mold and/or resulting allergens, and/or seek costs and/or expenses associated in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal and/or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens and/or any obligation to share with or repay any person, organization or entity related to the same.

91. Endorsement 12 17 specifically excludes any coverage for "property damage" arising out of, resulting from, caused by, contributed to, attributed to and/or related to fungus, mildew, mold and/or resulting allergens, and/or seek costs and/or expenses associated in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization,

25

monitoring, removal, disposal and/or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens and/or any obligation to share with or repay any person, organization or entity related to the same.

92. Endorsement 12 17 excludes coverage for some or all of the Smiths' claims against RM Standard.

93. Because Endorsement 12 17 excludes coverage for the claims in the Underlying Lawsuit, Mid Continent has no obligation to defend or indemnify RM Standard under the Policy for the Underlying Lawsuit, nor is there any obligation to RM Standard or the Smiths.

## COUNT XIII
## (<u>DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT</u>)

94. Mid Continent repeats and realleges the allegations of paragraphs 1 through 93 as if fully set forth.

95. Even if some claims alleged by the Smiths in the Underlying Lawsuit occurred during the Policy Period and do constitute an "occurrence" and "property damage" under the Policy and applicable law and no exclusions or endorsements apply, then Endorsement CG 0300 (01 96) titled "Deductible Liability Insurance" must be applied and enforced so that Mid Continent has no obligation to pay damages until RM Standard has satisfied its Per Claim Deductible of $2,500 for each claim arising under the facts.

96. The Deductible Liability Insurance Endorsement states that Mid Continent's obligation under the Property Damage Liability Coverage to pay damages on RM Standard's behalf applies only to the amount of damages in excess of the deductible amount of $2,500 per claim.

97.    In the event multiple claims exist under the facts then RM Standard must satisfy the entire deductible amount for all covered claims before Mid Continent has any obligation to pay.

98.    In the event the number of multiple claims existing under the facts multiplied by the Per Claim Deductible of $2,500 comes to a total deductible amount that is greater than the total legal liability of RM Standard to the Smiths, then Mid Continent has no obligation to pay any monies to the Smiths or reimburse RM Standard for any payments to satisfy such legal liability.

## <u>RELIEF REQUESTED IN ALL COUNTS</u>

WHEREFORE, plaintiff Mid Continent Casualty Company requests that this Court enter judgment:

a.    declaring the rights and obligations of Mid Continent and the defendants with respect to the Underlying Lawsuit and any judgment thereon;

b.    declaring that Mid Continent has no obligation under any policy of insurance to defend or indemnify RM Standard in connection with the Underlying Lawsuit or any judgments that may be rendered in the Underlying Lawsuit for uncovered claims and/or damages, including any costs or fees associated with appeal of that action or any subsequent judicial or administrative process arising from the Underlying Lawsuit;

c.    declaring that Mid Continent has, therefore, no obligations to RM Standard under any provision of the Policy for claims and damages found to be uncovered;

d.    declaring that Mid Continent has no liability to any other defendant in this action in connection with the Underlying Lawsuit or any other party in the Underlying

Lawsuit, including any judgment thereon for claims and damages found to be uncovered;

e. determining the number of claims that have occurred, and for any such claims found to be covered under Mid Continent's Policy, determining the amount of deductible required to be paid by RM Standard;

f. awarding Mid Continent's costs and disbursements incurred in connection with this action; and

g. granting such other relief as this Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF VINCENT F. O'FLAHERTY, ATTORNEY, LLC

By____s/Vincent F. O'Flaherty_____
Vincent F. O'Flaherty    MO Bar No: 34693
3637 Main Street
Kansas City, MO  64111
(816) 931-4800 Telephone
(816) 756-2168 Fax
voflaherty@voflaw.com
ATTORNEYS FOR PLAINTIFF